[Cite as *State v. Sparks*, 2020-Ohio-4930.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-78 |
| | : | |
| | : | Trial Court Case No. 2019-CR-389 |
| v. | : | |
| | : | (Criminal Appeal from |
| DAVID C. SPARKS | : |  Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 16th day of October, 2020.

. . . . . . . . . .

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, Greene County Prosecutor's Office, Appellate Division, 61 Greene Street, Suite 200, Xenia, Ohio 45385
       Attorney for Plaintiff-Appellee

JOHN A. FISCHER, Atty. Reg. No. 0068346, 70 Birch Alley, Suite 240, Dayton, Ohio 45440
       Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** After a jury found David C. Sparks guilty of aggravated possession of drugs, the trial court sentenced him to a 12-month prison term, with optional post-release control for up to three years. Sparks appeals from that judgment, arguing that the jury verdict was supported by insufficient evidence and was against the manifest weight of the evidence. The judgment of the trial court will be affirmed.

## Factual and Procedural Background

**{¶ 2}** At about 4:45 a.m. on March 24, 2019, Officer Joe Walton of the Fairborn Police Department responded with his patrol partner to a dispatch about "a suspicious person * * * yelling and screaming" in the street in the vicinity of Top Dog Saloon. (Trial Tr., p. 140.) Upon arriving at that location, Officer Walton noticed a man standing in the bar's parking lot who matched the description given in the dispatch. According to Officer Walton, the man "kind of had a dazed look on his face" (*id.*, p. 142), and "it was immediately apparent that he was under the influence due to his lack of balance [and] slurred speech." (*Id.*, p. 143.) Officer Walton stated that the man, whom he identified as Sparks, was "aggressive" and directed "[v]ulgar language" toward the officers from the time they first approached him. (*Id.*)

**{¶ 3}** Officer Walton testified that Sparks first told him that he (Sparks) "was walking home," and that he lived in Fairborn Apartments, about a mile to a mile and a half away. (*Id.*, p. 143-144.) Subsequently, however, Sparks told the officers that he "was on his way to the bus stop at Wright State, and he was going to ride his bike there." (*Id.*, p. 145.) Officer Walton said that Sparks continued to shout profanities at the officers throughout the encounter, despite multiple warnings to stop doing so. Because the

officers were concerned about Sparks's safety in his apparently intoxicated condition, Officer Walton placed Sparks under arrest for disorderly conduct.

{¶ 4} Officer Walton handcuffed Sparks, performed a pat down over the multiple layers Sparks was wearing, placed Sparks in the police cruiser, and transported him to the Fairborn City Jail. Once at the jail, Officer Walton performed a more thorough search of Sparks's person, during which he found "a glass tube * * * [with] white residue on the inside of it" in Sparks's outer right coat pocket. (*Id.*, p. 150-151.) Based on his training and experience, Officer Walton believed the glass tube to be a "meth pipe." (*Id.*) Initial field testing for the presence of methamphetamine yielded a positive result; later laboratory testing confirmed that the pipe contained trace amounts of methamphetamine. As a result, Sparks was indicted on a single count of aggravated possession of drugs in violation of R.C. 2925.11(A), a fifth-degree felony, with a forfeiture specification.

{¶ 5} Officer Walton was the only witness to appear at Sparks's trial. He identified a video-recording of his interaction with Sparks, which was played for the jury. In closing argument, the State remarked on what it characterized as Sparks's lack of reaction when the pipe was discovered inside his coat pocket. The jury returned a verdict of guilty on the aggravated possession of drugs offense, and the trial court subsequently sentenced Sparks to a 12-month prison term, with post-release control for up to three years.

{¶ 6} Sparks appeals from that judgment, setting forth two assignments of error:

1) The Jury Verdict Was Based on Insufficient Evidence

2) The Jury Verdict Was Against the Manifest Weight of the Evidence.

**Assignment of Error #1 – Insufficient Evidence**

{¶ 7} Sparks's first assignment of error contends that the jury verdict was based

on insufficient evidence. More specifically, he challenges the sufficiency of the evidence to support a finding that he "knowingly" possessed the methamphetamine found in the pocket of his coat.

**{¶ 8}** A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶ 9}** The statute that Sparks was convicted of violating provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.11(A). Methamphetamine is a controlled substance. *See* R.C. 2925.11(II). For purposes of drug offenses, " '[p]ossess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶ 10}** Officer Walton's uncontroverted testimony established that a pipe with trace amounts of methamphetamine was located inside the pocket of the coat that Sparks was

wearing at the time of his arrest. Sparks nonetheless argues that Officer Walton's testimony was insufficient to support a finding that Sparks was aware of the pipe's presence. We disagree.

{¶ 11} Although Sparks attempts to analogize his case to *State v. Moss*, 8th Dist. Cuyahoga No. 56889, unreported (May 10, 1990), that decision is inapposite. In *Moss*, the defendant was convicted of possession of cocaine found on the windowsill of a motel bathroom where the defendant just had taken a shower. The evidence showed that the motel room was registered to a different man (Thomas) who was absent when the police arrived, that Thomas had the only key to the room, and that Moss had brought no personal items to the room other than the clothes he was wearing. Under those circumstances, the appellate court found the evidence insufficient to prove that Moss knowingly possessed the cocaine discovered in the motel room. That result is consistent with R.C. 2925.01(K), which provides on its face that possession of a substance "may not be inferred solely from mere access * * * through * * * occupation of the premises upon which the * * * substance is found."[1]

{¶ 12} R.C. 2925.01 contains no such limitation on the inferences that may be drawn when a controlled substance is present on the defendant's person or in his or her clothing. In comparable situations, other appellate courts have deemed the evidence sufficient to support an inference that the defendant knowingly possessed drugs found in his or her coat pocket. *See, e.g., State v. Bennett*, 8th Dist. Cuyahoga No. 57149, 1990

---

[1] Another decision on which Sparks heavily relies – *State v. Flores-Lopez*, 2017-Ohio-690, 85 N.E.3d 534, ¶ 52 (2d Dist.) – also involved drugs found not on the defendant's person, but in his proximity (in that case, inside a suitcase in the backseat of a vehicle in which the defendant was a passenger), and likewise is distinguishable on that basis.

WL 88725 (June 28, 1990); *State v. Woods*, 9th Dist. Summit No. 22267, 2005-Ohio-2681.

{¶ 13} In *Bennett*, the defendant denied knowledge of two plastic bags of cocaine found by a parole officer in the pocket of the jacket the defendant was wearing; at trial, another witness testified that he, not the defendant, had placed the bags there. Nevertheless, the court of appeals determined "there was enough evidence for the jury to reasonably infer knowledge on the part of defendant." *Bennett* at *2. Similarly, in *Woods*, the appellate court sustained the defendant's conviction for possession of crack cocaine found inside a coat hanging in the defendant's bedroom closet, despite the trial testimony of the defendant's nephew that he, not the defendant, had placed the crack in that coat. We likewise conclude that the presence of the meth pipe in Sparks's coat pocket was sufficient to support an inference that he knowingly possessed that pipe.

{¶ 14} Our conclusion is not altered by Sparks's challenge to the significance of his alleged lack of reaction to the pipe's discovery. Although Sparks maintains that Officer Walton's own testimony shows that Sparks was too intoxicated for his alleged lack of reaction to be interpreted as indicative of prior knowledge, the jurors were free to draw their own conclusions regarding the significance of the video, if any. As the above-cited cases underscore, the mere presence of the pipe in Sparks's pocket was sufficient to support an inference that he was aware it was there, irrespective of his response (or lack thereof) to Officer Walton's discovery of the pipe. We are not persuaded by Sparks's additional argument that the evidence of knowledge was insufficient because Officer Walton failed to discover the pipe during his initial pat down of Sparks, meaning that Sparks, too, could have been oblivious to the pipe's presence in the pocket of his heavy

coat.

{¶ 15} Sparks also faults Officer Walton for not inquiring about the pipe and possible explanations for its presence, but that argument is no more availing. While Officer Walton admitted on cross-examination that he did not ask Sparks whether the coat was his, whether others may have had access to the coat, or whether the pipe was his, even a denial or an alternative explanation from Sparks would not have rendered the evidence insufficient. *See Bennett; Woods.*. Officer Walton's testimony that a pipe containing traces of methamphetamine was found inside the pocket of the coat Sparks was wearing was sufficient to permit a rational trier of fact to find that the essential elements of the offense of aggravated possession of drugs had been proven beyond a reasonable doubt.

{¶ 16} Sparks's first assignment of error is overruled.

### Assignment of Error #2 – Manifest Weight of the Evidence

{¶ 17} Sparks's second assignment of error contends that the jury's guilty verdict was against the manifest weight of the evidence. His arguments largely echo those offered in support of his challenge to the sufficiency of the evidence.

{¶ 18} In contrast to an insufficient evidence challenge, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson,* 2d Dist. Montgomery No. 22581, 2009-Ohio-525, at ¶ 12; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility,

and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 19} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. White*, 2018-Ohio-3076, 118 N.E.3d 410, ¶ 38 (2d Dist.), citing *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 20} Sparks did not testify and also offered no other witnesses or evidence at trial, instead basing his defense on his attorney's argument that the State had failed to prove beyond a reasonable doubt that Sparks knowingly possessed methamphetamine. Having determined that the evidence was sufficient to sustain Sparks's conviction, we also determine that the guilty verdict was not against the manifest weight of the evidence. We must defer to the jury's apparent assessment of Officer Walton's testimony as credible, as well as its assessment of the significance of the video-recording of Sparks's arrest. The State's evidence sufficed to support an inference that Sparks was aware of the pipe in his coat pocket, and no contrary evidence was presented to the jury. The record reveals no basis for concluding that the jury lost its way in finding that Sparks knowingly possessed methamphetamine.

**{¶ 21}** Sparks's second assignment of error is overruled.

## Conclusion

**{¶ 22}** For the foregoing reasons, the judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies sent to:

Marcy A. Vonderwell
John A. Fischer
Hon. Stephen Wolaver